

FILED

May 23 2016, 9:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John P. Daly, Jr.
Golitko & Daly, PC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Donald G. Orzeske
Beth L. Riga
Goodin Orzeske & Blackwell, PC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Ryan, | May 23, 2016 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 49A02-1508-CT-1198 |
| v. | Appeal from the Marion Superior Court |
| TCI Architects/Engineers/ Contractors, Inc. and BMH Enterprises, Inc., d/b/a Craft Mechanical, | The Honorable Thomas Carroll, Judge |
| *Appellee-Defendant.* | Trial Court Cause No. 49D06-1303-CT-8401 |

**May, Judge.**

[1]     Michael Ryan was injured while working on a construction project. Ryan worked for Romines, a subcontractor to Craft, who was a subcontractor to the general contractor, TCI. Ryan sued Craft and TCI, claiming they had a duty to provide him a safe workplace and their breach caused his injury. Ryan moved

for partial summary judgment, claiming both defendants had a non-delegable contractual duty toward him. TCI[1] moved for summary judgment on duty, breach, and proximate cause. As TCI had no duty toward Ryan, we affirm.

## Facts and Procedural History[2]

Ryan was an employee of B.A. Romines Sheet Metal. Ryan had been a sheet metal worker since 1999 and was a member of the sheet metal workers' union. The union assigned him to work for Romines on a Gander Mountain store in Lafayette. On his second day there, Ryan was removing ductwork hanging above the second-floor decking of the building. Ryan claimed he lost his balance while standing on the top step of an eight-foot ladder and fell.

TCI was general contractor for the work on the store. The contract TCI and Gander entered into was "DBIA Document No. 530 1998 Standard Form of Agreement Between Owner and Design-Builder." (*Id.* at 52.) The contract includes DBIA Document No. 535, Standard Form of General Conditions of Contract Between Owner and Design-Builder.

Section 2.8.1 of the general contract provided TCI "recognizes the importance of performing the Work in a safe manner so as to prevent damage, injury or loss

---

[1] It is not clear from this record whether Craft moved for summary judgment, but this appeal involves only TCI.

[2] We heard oral argument before the Indiana State Bar Association's Leadership Development Academy on February 16, 2016, at the Indiana State Library in Indianapolis. We thank the ISBA and the State Library for their hospitality and we commend counsel on the quality of their oral advocacy.

to . . . all individuals at the site, whether working or visiting." (*Id.* at 71.) It assumed "all responsibility for implementing and monitoring all safety precautions and programs related to the performance of the Work." (*Id.*) It would "designate a safety Representative with the necessary qualifications and experience to supervise the implementation and monitoring of all safety precautions and programs related to the Work." (*Id.*)

[5]     Section 2.8.3 provided, however, TCI's

> responsibility for safety . . . is not intended in any way to relieve Subcontractors and Sub-Subcontractors of their own contractual and legal obligations and responsibility for . . . taking all necessary measures to implement and monitor all safety precautions and programs to guard against injury, losses, damages or accidents resulting from their performance of the work.

*Id.*

[6]     TCI hired several subcontractors, at least one of which, Craft Mechanical, contracted with Ryan's employer, B.A. Romines Sheet Metal. The contract between TCI and Craft provided Craft "shall be solely responsible for the protection and safety of its employees." (*Id.* at 111.) The Craft subcontract with Romines provided Craft "would assume toward [Romines] all obligations and responsibilities that [TCI] . . . assumes toward [Craft]." (*Id.* at 138.) It obliged Romines to "take reasonable safety precautions with respect to performance of this Subcontract," to "comply with safety measures initiated by

[Craft] and with all applicable laws . . . for the safety of persons and property in accordance with the requirements of the Prime Contract." (*Id*. at 140.)

Ryan moved for partial summary judgment, claiming TCI had a non-delegable contractual duty toward him. TCI moved for summary judgment on duty, breach, and proximate cause. The trial court denied Ryan's motion, finding "genuine issues of material fact exist with regard to the essential element of duty." (*Id*. at 11.) But it then granted the TCI motion, finding there were *not* any genuine issues of material fact to be submitted to a jury.

## Discussion and Decision

Summary judgment is appropriate where the designated evidence shows there is no genuine issue as to any fact material to a particular issue or claim and that the moving party is entitled to judgment as a matter of law. *WellPoint, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 29 N.E.3d 716, 720 (Ind. 2015), *modified on reh'g on other grounds*, 38 N.E.3d 981 (Ind. 2015). An appellate court reviews entries of summary judgment *de novo*, through the same lens as the trial court, construing all designated evidence and reasonable inferences and resolving any doubts as to the existence of a genuine issue of material fact in favor of the nonmoving party. *Id*. at 720-21. The interpretation of a contract is particularly well-suited for *de novo* appellate review, because it generally presents questions purely of law. *Id*. at 721. Clear and unambiguous contract language is given its ordinary meaning. *Id*. Where contractual language is ambiguous, our primary goal is to determine the intent of the parties at the time

the contract was made. *Id.* The party appealing a decision on summary judgment bears the burden of persuading us the ruling was erroneous. *Morris v. Crain*, 969 N.E.2d 119, 123 (Ind. Ct. App. 2012).

[9] The tort of negligence consists of three elements: 1) a duty owed to the plaintiff by the defendant; 2) a breach of that duty by the defendant; and 3) injury to the plaintiff proximately caused by that breach. *Bloemker v. Detroit Diesel Corp.*, 720 N.E.2d 753, 756 (Ind. Ct. App. 1999), *reh'g denied, trans. denied*. The existence of a duty owed to the plaintiff is usually a question of law for the court's resolution. *Id.* at 757. Summary judgment is rarely appropriate in a negligence action, but it may be suitable to determine the legal question of whether there is a duty. *Id.* Absent a duty, there can be no breach, and thus, no basis for recovery under a negligence theory. *Id.*

[10] As a general rule, an employer does not have a duty to supervise the work of an independent contractor to assure a safe workplace and, consequently, is not liable for the negligence of the independent contractor. *Stumpf v. Hagerman Const. Corp.*, 863 N.E.2d 871, 876 (Ind. Ct. App. 2007), *trans. denied*. The rationale behind the rule is that a general contractor typically exercises little, if any, control over the means or manner of the work of its subcontractors, and requires only that the completed work meet the specifications of the owner in its contract with the general contractor. *Id.* But we have recognized an exception

to that general rule when one party is by law or contract[3] charged with performing the specific duty. *Id*.

[11] In determining whether a party assumed a duty by contract, as Ryan argues TCI did, we look at the parties' intent at the time of execution of the contract as disclosed by the language used to express their rights and duties. *Id*. We look to the contract as a whole to determine if a party is charged with a duty of care pursuant to the contract. *Id*. We accept an interpretation of the contract that harmonizes its provisions. *Id*. If a contract affirmatively evinces intent to assume a duty of care, actionable negligence may be predicated on the contractual duty. *Id*. Such duty is considered non-delegable, and a principal will be liable for the negligence of the contractor because the responsibilities are deemed so important to the community that the principal should not be permitted to transfer these duties to another. *Id*. at 876-77.

[12] To impose liability, a contract provision must be specific as to the duty assumed by the general contractor. *Harris v. Kettelhut Constr., Inc.*, 468 N.E.2d 1069, 1076-77 (Ind. Ct. App. 1984), *reh'g denied, trans. denied*. In *Stumpf*, we determined Hagerman, the general contractor, contractually assumed a duty of

---

[3] On appeal Ryan argues the language in the TCI contract is a "plain English" version of an American Institute of Architects (AIA) form contract that we have held creates a duty of safety on the part of the builder on a construction site. It is not. TCI correctly notes the language is in fact a form contract from the Design-Build Institute of America (DBIA), not the AIA, and as explained below the language is significantly different. The parties direct us to no case law interpreting the DBIA contract language.

care to the employees of its subcontractors when its contract required Hagerman

> to take precautions for the safety of employees on the work site. As in *Perryman* [*v. Huber, Hunt & Nichols, Inc.*, 628 N.E.2d 1240 (Ind. Ct. App. 1994), *trans. denied*], Hagerman was required to designate a responsible member of its organization whose duty would be the prevention of accidents. Paragraph forty-four of the contract further provided: "The Contractor shall administer and comply with all the rules, standards, and regulations of the Construction Safety Act [and OSHA]." Appellants' App. p. 740. Taken as a whole, we believe that this contractual language evinces intent by the parties to charge Hagerman with a duty of care for the safety of all the employees on the project, including the employees of its subcontractors.

863 N.E.2d at 878.

[13] Our decision was premised on this language in the contract between Hagerman and Purdue University:

> The Contractor shall take all necessary precautions for the safety of employees on the work, and shall comply with all applicable provisions of Federal, State, and Municipal safety laws[4] and building codes to prevent accidents or injury to persons on, about or adjacent to the premises where the work is being performed. . . . Contractor shall designate a responsible member of its

---

[4] We noted that a duty cannot be created by an OSHA regulation alone. *Stumpf*, 863 N.E.2d at 876 n.2. A determination made under OSHA regulations is irrelevant as to the issue of whether the defendant owed the plaintiff a duty because an OSHA standard cannot be used to expand an existing common law or statutory duty, nor can it be used as evidence of an expanded duty of care. *Id.*

organization on the work, whose duty shall be the prevention of accidents.

*Id*. at 877 (footnote added). The Stumpfs contended that language indicated Hagerman intended to assume a duty of care to all the employees on the project, and that it was required to ensure that the subcontractors implemented safety procedures. We agreed. *Id*.

[14] The corresponding language in the TCI contract[5] is different. It provides in section 2.8.1 that:

> [TCI] *recognizes the importance* of performing the Work in a safe manner so as to prevent damage, injury or loss to (i) all individuals at the site, whether working or visiting, (ii) the Work, including materials and equipment incorporated into the Work or stored on-Site or off-Site, and (iii) all other property on the Site or adjacent thereto. [TCI] assumes "responsibility for implementing and monitoring all safety precautions and programs related to the performance of the Work. [TCI] shall, prior to commencing construction, designate a Safety Representative with the necessary qualifications and experience *to supervise the implementation and monitoring* of all safety precautions and programs related to the Work. Unless otherwise required by the Contract Documents, [TCI's] Safety Representative shall be an individual stationed at the Site who may have responsibilities on the project in addition to safety. The Safety Representative shall

---

[5] In his brief Ryan offers a "table" that he says "sets out the [TCI] and *Stumpf* contract language side by side for easy comparison." (Appellant's Br. at 5-6.) The *Stumpf* contractual language as Ryan presents it in the table does not exactly match the contract language as we quoted it in *Stumpf*. However, it does not appear the differences are legally significant. Our reading of *Stumpf* indicates most of the provisions of the *Stumpf* contract Ryan includes in his "table" cannot be found in the *Stumpf* decision. If the *Stumpf* contract is included in Ryan's Appendix, the table of contents does not so indicate.

make routine daily inspections of the Site and shall hold weekly safety meetings with [TCI's] personnel, Subcontractors and others as applicable.

(App. at 71) (emphasis added).

[15] The *Stumpf* language that we found gave rise to a general contractor's duty obliged the general contractor to 1) take all necessary precautions for the safety of employees on the work; 2) comply with all applicable provisions of Federal, State, and Municipal safety laws and building codes to prevent accidents or injury to persons on, about, or adjacent to the premises where the work is being performed; and 3) designate a person whose duty is prevention of accidents. 863 N.E.2d at 877.

[16] We addressed the effect of similar contract language in *Capitol Const. Servs., Inc. v. Gray*, 959 N.E.2d 294 (Ind. Ct. App. 2011). Capitol, the general contractor, agreed to "comply with all laws, ordinances, rules and regulations bearing on the project" and "maintain physical conditions and employee performance on the jobsite during the course of construction to conform with all local and federal laws, rules and regulations including those covered by the Occupational Safety and Health Act of 1970." *Id*. at 299. The contract provided Capitol was "as fully responsible for the acts and omissions of his subcontractors, and of persons either directly or indirectly employed by them, as he is for the acts and omissions of persons employed directly by him." *Id*. Capitol would "provide and require the use of conventional fall protection, *i.e.* personal fall arrest systems, safety net systems or guardrail systems . . . when its employees *or*

*subcontractors* are performing construction work that is in excess of six feet above a lower level. *Id*. (emphasis added). Those provisions, we determined, "go beyond requiring that Capitol merely supervise the work of its employees and subcontractors, and instead they contain language requiring the contractor to take precautions for the safety of employees on the work site, thereby affirmatively evincing the intent on Capitol's part to assume a duty of care." *Id*. at 303.

[17] We noted in *Capitol* that the *Stumpf*, *Perryman*, and *Harris* contracts evinced intent by the parties to charge the general contractor with a duty of care for the safety of all the employees on the project, including the employees of its subcontractors. *Id*. at 303. All three contracts contained similar language requiring the contractor to take precautions for the safety of employees on the work site. *Id*. In *Stumpf*, for example, Hagerman was contractually required to designate a member of its staff whose duty would be to prevent accidents. *Capitol,* 959 N.E.2d at 302.

[18] The TCI contract, by contrast, does not require TCI to "take precautions" as did the *Stumpf* contract, *id.*, but instead says TCI "recognizes the importance" of safety. (App. at 71.) TCI's safety representative was not someone "whose duty shall be the prevention of accidents," 863 N.E.2d at 877, as was the designated safety representative in *Stumpf*, but instead was someone charged with "supervis[ing] the implementation and monitoring" of safety precautions. (App. at 71.) That TCI's representative is charged only with "supervising"

suggests the "implementation and monitoring" would be done by someone else; the TCI subcontracts indicate the subcontractors had that responsibility.

[19]     In *Capitol*, we distinguished the *Stumpf*, *Perryman*, and *Harris* contracts from the contract in *Helms v. Carmel High Sch. Vocational Bldg.*, 844 N.E.2d 562, 564 (Ind. Ct. App. 2006), *aff'd in part by* 854 N.E.2d 345 (Ind. 2006), where the general contractor was obliged to ensure that its construction "conform to all applicable laws of the State of Indiana." That language did not evince an intent that the general contractor had contracted to provide a safe worksite for its subcontractors, *id*. at 566, because unlike the *Stumpf* contract, the language did not

> specifically assign[] [the general contractor] the duty to provide for the safety of its employees and to prevent injury to employees. Furthermore, [the general contractor] contractually agreed to administer and comply with OSHA regulations. [The general contractor] was also contractually required to designate a member of its staff whose duty would be to prevent accidents.

*Capitol*, 959 N.E.2d at 303 (quoting *Stumpf*, 863 N.E.2d at 878).

[20]     Similarly, in *Shawnee Const. & Eng'g, Inc. v. Stanley*, 962 N.E.2d 76, 84 (Ind. Ct. App. 2011), *trans. denied*, we determined when the general contract and the relevant subcontract were taken as a whole, "neither contract evinces a duty upon Shawnee [the general contractor] to ensure the safety of all persons providing services." *Id*. For example, no provisions in the agreements delegated a duty of inspection to Shawnee. We noted the subcontract, like the Craft subcontract in the case before us, provided that Schust, the subcontractor

who employed Stanley, assumed "entire responsibility and liability for any and all damage and injury of any kind or nature whatsoever to all persons." *Id*. Schust did not expect Shawnee to supervise, monitor, or be involved in Schust's safety practices and it understood the Subcontract Agreement to assign sole responsibility to Schust to set safety standards for its employees and to monitor its employees' compliance. *Id*.

The TCI contract is more like those in *Helms* and *Shawnee*, and it does not impose a duty of care toward the employees of TCI's subcontractors because the contract terms do not "go beyond requiring that [TCI] merely supervise the work of its employees and subcontractors" as they did in *Capitol*. Rather, as noted above, TCI "recognizes the importance of" safety, and its Safety Representative is obliged to "supervise the implementation and monitoring" of safety matters. (App. at 71.) We accordingly affirm summary judgment for TCI.[6]

Affirmed.

Najam, J., concurs.

Riley, J., dissents with separate opinion.

---

[6] As we hold TCI had no duty of care toward employees of its subcontractors, we do not address Ryan's argument TCI's duty could not be delegated.

# IN THE
# COURT OF APPEALS OF INDIANA

Michael Ryan,

*Appellant-Plaintiff,*

v.

TCI Architects/Engineers/
Contractors, Inc. and BMH
Enterprises, Inc., d/b/a Craft
Mechanical,

*Appellee-Defendant.*

Court of Appeals Case No.
49A02-1508-CT-1198

**Riley, Judge dissenting.**

I respectfully dissent from the majority's conclusion that "the TCI contract does not impose a duty of care toward the employees of TCI's subcontractors because the contract terms do not 'go beyond requiring that [TCI] merely supervise the work of its employees and subcontractors[.]'"  Slip op. p. 12.  The majority's decision is based on an analysis of the contractual language and its close resemblance to *Helms*, which, in turn, distinguishes it from *Stumpf*, *Capitol*, *Perryman*, and *Harris*.

By analogizing to *Helms* and distinguishing from *Stumpf*, the majority elevates form over substance in its interpretation of the contractual provisions regarding safety.  Here, TCI "recognize[d] the importance of performing the Work in a

safe manner so as to prevent damage, injury or loss to (i) all individuals at the Site[.]" (Appellant's App. p. 71). In this regard, TCI "assume[d] responsibility for implementing and monitoring all safety precautions and programs related to the performance of the Work." (Appellant's App. p. 71). To that end, TCI "shall, prior to commencing construction, designate a Safety Representative . . . to supervise the implementation and monitoring of all safety precautions and programs related to the Work." (Appellant's App. p. 71). In connection with this responsibility, the Safety Representative "shall make daily inspections of the site and shall hold weekly safety meetings with [TCI's] personnel, Subcontractors and others as applicable." (Appellant's App. p. 71). TCI contractually agreed to perform the work in accordance with the "Legal Requirements," which are defined as "all applicable federal, state, and local laws, codes, ordinances, rules, regulations, orders and decrees of any government or quasi-government[.]" (Appellant's App. p. 68). Prior to commencing work on the site, "[a]ll TCI employees, tradesmen and subcontractors" had to "comply with . . . all OSHA and TCI guidelines" and were required to report all injuries to the TCI Superintendent or Assistant Superintendent. (Appellant's App. p. 250). Moreover, during the construction phase of the project, TCI committed that it "shall at all times exercise complete and exclusive control over the means, methods, sequences and techniques of construction." (Appellant's App. p. 70). Despite TCI's assertion to the contrary, in the Standard Form of Agreement, TCI agreed to "provide all material, equipment, tools and labor necessary to complete the Work described

in and reasonably inferable from the Contract Documents." (Appellant's App. p. 53).

[25]     By assuming the *responsibility* of the *implementation* and *monitoring* of the safety programs, and the assignment of a Safety Representative, TCI affirmatively evinced an intent to assume a non-delegable duty of care, which placed it directly in line with *Stumpf*.  *See also Perryman*, 628 N.E.2d at 1244 (where we found it important that the general contractor was responsible for reviewing the safety programs of the subcontractors); *Moore v. Shawmut Woodworking & Supply, Inc.*, 788 F. Supp. 2d 821, 825 (S.D. Ind. 2011) (where the court found a duty of care based on, among other, the contractual provisions that "[t]he Contractor shall be solely responsible for and have control over the means, methods, techniques, sequences and procedures. . . of the Work []" and "[t]he Contractor shall be responsible for initiating, maintaining and supervising all safety precautions[.]").  Accordingly, I would reverse the trial court's summary judgment in favor of TCI and grant Ryan's partial summary judgment with respect to TCI.