ATTORNEYS FOR APPELLANT
John P. Daly, Jr.
Golitko & Daly, PC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Donald G. Orzeske
Beth L. Riga
Orzeske-Blackwell, P.C.
Indianapolis, Indiana



FILED

Apr 26 2017, 3:15 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# In the
# Indiana Supreme Court

No. 49S02-1704-CT-253

MICHAEL RYAN,

*Appellant (Petitioner below),*

v.

TCI ARCHITECTS/ ENGINEERS/
CONTRACTORS, INC. AND BMH
ENTERPRISES, INC., D/B/A CRAFT
MECHANICAL,

*Appellee (Respondent below).*

Appeal from the Marion County Superior Court, No. 49D06-1303-CT-8401
The Honorable Thomas J. Carroll, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-1508-CT-1198

**April 26, 2017**

**David, Justice.**

At issue is whether a general contractor assumed a non-delegable duty of care to keep a worksite safe when it executed the contract in question. Guided by the contract's plain language and looking at the contract as a whole, we find the contract demonstrates the general contractor's intent to assume a duty of care. Thus, we: 1) reverse the trial court's grant of partial summary judgment for defendant; 2) grant the plaintiff's motion for partial summary judgment on the issue of duty; and 3) remand for further proceedings on breach, causation, and damages.

**Facts and Procedural History**

This case stems from a workplace injury sustained by a subcontractor's employee. In June 2012, TCI Architects ("TCI") entered into an agreement with Gander Mountain to serve as the general contractor on a construction project. The project involved renovations to Gander Mountain's retail store in Lafayette, Indiana. TCI subsequently hired several subcontractors, including BMH Enterprises, Inc., d/b/a/ Craft Mechanical ("Craft"), to perform work on the site. Craft further sub-contracted with B.A. Romines Sheet Metal ("Romines") to carry out heating and ventilation work for the project.

The parties used various contract instruments to formalize their obligations. TCI and Gander Mountain used a "form contract" created by the Design-Build Institute of America ("DBIA") for design-build projects[1]; specifically, they used a form called DBIA Document No. 530 1998 Standard Form of Agreement Between Owner and Design-Builder ("Form No. 530"). The contract also included a second form called DBIA Document No. 535, Standard Form of General Conditions of Contract Between Owner and Design-Builder ("Form No. 535"). Section 2.8 of Form No. 535 generally outlined the extent of TCI's obligations regarding safety on the site.

TCI and Craft drew up a subcontract of their own. The TCI-Craft subcontract placed the onus of ensuring employee safety on Craft. Similarly, Craft and Romines memorialized their obligations in a sub-subcontract, which called for Craft to assume toward Romines the same responsibilities that TCI assumed toward Craft. The Craft-Romines sub-subcontract also charged Romines with the responsibility of implementing safety precautions and complying with applicable laws.

On June 26, 2016, Michael Ryan, an experienced sheet metal worker and Romines employee, was working at the Gander Mountain construction site when he allegedly fell approximately 8-10 feet, sustaining serious bodily injuries. Ryan testified that, at the time he fell, he was standing on top of an 8-foot ladder, removing ductwork that hung above the second-floor decking of a building. The ladder Ryan was given was allegedly too short, and Ryan claims a Romines foreman, William Hadaway, told him it was the only one available. Hadaway, however,

---

[1] "Design-build is a method of project delivery in which one entity – the design-build team – works under a single contract with the project owner to provide design and construction services." See https://www.dbia.org/about/Pages/What-is-Design-Build.aspx

disputes Ryan's recollection of the incident, noting in a sworn affidavit that Romines had three ladders of various sizes on the premises – an 8-foot ladder, 10-foot ladder, and a 24-foot extension ladder. Hadaway also stated that he offered Ryan a choice of any of the three ladders, but Ryan chose the shortest one. In any case, Ryan admits he made no additional effort to contact or make complaints to either TCI or Craft.

On April 1, 2013, Ryan filed an Amended Complaint for Damages in the Marion Superior Court Civil Division No. 6 for the injuries sustained, naming TCI and Craft as defendants. Ryan claimed Craft and TCI had a duty to provide him with a safe workplace and he was injured as a result of their breach. On February 24, 2015, Ryan filed a motion for partial summary judgment on the issue of duty, claiming that both defendants had a non-delegable contractual obligation to provide a safe work environment. TCI then filed an opposition and cross motion for summary judgment, on the issues of duty, breach, and proximate cause. Craft also filed an opposition to Ryan's motion.[2] After hearing argument on the various motions, the trial court denied Ryan's motion, finding that genuine issues of material fact existed regarding TCI's duty, but then granted TCI's motion, finding that there were not any genuine issues of material fact to be submitted to a jury.

Ryan then appealed the grant of TCI's cross motion for summary judgment, again arguing that TCI assumed a non-delegable duty of care when it contracted with Gander Mountain. In a 2-1 published decision, a Court of Appeals majority affirmed the trial court's grant of summary judgment, concluding that the contract between TCI and Gander Mountain (the "TCI Contract") did not create a duty. Ryan v. TCI Architects/Engineers/Contractors, Inc., 55 N.E.3d 340, 346 (Ind. Ct. App. 2016), reh'g denied (Aug. 2, 2016). Judge Riley dissented, opining that the language of the contract, particularly the language "assuming the responsibility of the implementation and monitoring of the safety programs," demonstrated an intent to assume a non-delegable duty of care. Id. at 347. Thus, she believed a duty was owed to Ryan and would have reversed the trial court. Id.

Ryan sought transfer, arguing the trial court's grant of summary judgment was incorrect. We scheduled oral argument without granting transfer. After having the benefit of oral argument,

---

[2] The record does not make clear whether Craft moved for summary judgment, but only TCI appealed.

we now grant Ryan's Petition to Transfer, thereby vacating the Court of Appeals' opinion. Ind. Appellate Rule 58(A).

## Standard of Review

This Court reviews summary judgment orders *de novo*. Wellpoint, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA, 29 N.E.3d 716, 720 (Ind.), modified on reh'g on other grounds, 38 N.E.3d 981 (Ind. 2015). Summary judgment is appropriate if the designated evidence shows there is no genuine issue as to any fact material to a particular issue or claim, and the moving party is entitled to judgment as a matter of law. Id. In viewing the matter through the same lens as the trial court, we construe all designated evidence and reasonable inferences therefrom in favor of the non-moving party. Id. at 720-21. Legal questions, such as contract interpretation, are well-suited for summary judgment. Id. at 721. The party appealing the trial court's summary judgment determination bears the burden of persuading us the ruling was erroneous. Mullin v. Mun. City of S. Bend, 639 N.E.2d 278, 280-81 (Ind. 1994). Nonetheless, we "carefully scrutinize[] the trial court's decision to assure that the party against whom summary judgment was entered was not improperly prevented from having its day in court. Id.

## Discussion

The parties dispute whether, under these circumstances, a general contractor owed a duty of care to a subcontractor's employee. Specifically, Ryan argues that TCI contractually assumed a duty of care, which was breached when TCI failed to provide a reasonably safe work environment. TCI argues that it owed Ryan no such duty and summary judgment in its favor was correct. Finding that TCI was charged with a specific duty of care when it entered into a contract that demonstrated its intent to assume the duty, we reverse the trial court's grant of summary judgment for TCI, grant Ryan's Motion for Partial Summary Judgment, and remand for further proceedings.

I.   **A general contractor ordinarily owes no duty of care to subcontractor's employee, but may assume the duty through a contract.**

We begin our analysis with settled principles of tort law. Prevailing on a negligence claim requires fulfillment of three elements: 1) duty owed to plaintiff by the defendant; 2) breach of duty by allowing conduct to fall below the applicable standard of care; and 3) compensable injury

4

proximately caused by defendant's breach of duty.  Goodwin v. Yeakle's Sports Bar and Grill, Inc., 62 N.E.3d 384, 386 (Ind. 2016).  Whether a duty exists is a question of law for the court to decide.  Id. at 386-87.  Absent duty, there can be no negligence.  Peters v. Forster, 804 N.E.2d 736, 738 (Ind. 2004).  Thus, in granting TCI's motion for summary judgment on the issue of duty, Ryan was foreclosed from recovery.

As to the duty owed by a general contractor, the long-standing rule in Indiana is that "a principal will not be held liable for the negligence of an independent contractor."  Bagley v. Insight Commc'ns Co., L.P., 658 N.E.2d 584, 586 (Ind. 1995) (citing Prest-O-Lite Co. v. Skeel, 182 Ind. 593, 597, 106 N.E. 365, 367 (1914); also citing City of Logansport v. Dick, 70 Ind. 65, 78 (1880)).  Therefore, a general contractor, such as TCI, will ordinarily owe no outright duty of care to a subcontractor's employees, much less so to employees of a sub-subcontractor.  This means that when a subcontractor fails to provide a reasonably safe workspace, the general contractor will not incur liability for employee injury, even when such injury is proximately caused by the subcontractor negligence.  The rationale behind this rule is that a general contractor has little to no control over the means and manner a subcontractor employs to complete the work.  Stumpf v. Hagerman Const. Corp., 863 N.E.2d 871, 876 (Ind. Ct. App. 2007).

However, five exceptions to our general rule exist.  One such exception allows for the existence of a duty of care where a contractual obligation imposes a "specific duty" on the general contractor.[3]  Bagley, 658 N.E.2d at 586.  "If a contract affirmatively evinces an intent to assume a duty of care, actionable negligence may be predicated on the contractual duty."  Strumpf, 863 N.E.2d at 876.  In other words, a contract that is found to demonstrate the general contractor's intent to assume a duty of care exposes the general contractor to potential liability for a negligence claim where no such liability would have otherwise existed.  A duty imposed by contract, once formed, is non-delegable and is thought to encourage the general contractor to minimize the risk of resulting injuries.  Bagley, 658 N.E.2d at 588.

Ryan's theory of the case hinges on this exception; that is to say, Ryan argues that TCI assumed a non-delegable duty of care when it entered into a contract with Gander Mountain that

---

[3] The other exceptions recognized by Indiana law apply when: (1) the contract requires the performance of intrinsically dangerous work; (2) the act will create a nuisance; (3) the act to be performed will probably cause injury to others unless due precaution is taken; and (4) the act to be performed is illegal.  Bagley, 658 N.E.2d at 586.

imposed a specific duty on TCI to keep the worksite safe. TCI argues that no such intent can be gleaned from the contract's language. Thus, a question of contract interpretation is at the heart of this case. We look to the contract as a whole and agree with Ryan's position.

## II. TCI assumed a non-delegable duty of care for all workers on the site when it contracted with Gander Mountain.

Considering this particular contract's language, and taking the contract as a whole, Ryan prevails on the issue of existence of duty. Guided solely by well-established principles of contract interpretation, we find that TCI assumed a duty of care related to worksite safety for all employees when it entered into a contract with Gander Mountain.

In interpreting a contract, we ascertain the intent of the parties at the time the contract was made, as disclosed by the language used to express the parties' rights and duties. First Fed. Sav. Bank of Indiana v. Key Markets Inc., 559 N.E.2d 600, 603 (Ind. 1999). We look at the contract as a whole to determine if a party is charged with a duty of care and we accept an interpretation of the contract that harmonizes all its provisions. Kelly v. Smith, 611 N.E.2d 118, 121 (Ind. 1993). A contract's clear and unambiguous language is given its ordinary meaning. Wellpoint, Inc., 29 N.E.3d at 721. A contract should be construed so as to not render any words, phrases, or terms ineffective or meaningless. State Farm Fire and Cas. Co. v. Riddle Nat'l Bank, 984 N.E.2d 655, 658 (Ind. Ct. App. 2013), trans. denied.

The language that Ryan points to as affirmatively demonstrating TCI's intent to assume a duty of care is found in the contract Gander Mountain and TCI entered into – specifically Form 535. Ryan directs our attention to Section 2.8.1 of that form, which provides that "[TCI] recognizes the importance of performing the Work in a safe manner so as to prevent damage, injury or loss to . . . all individuals at the Site, whether working or visiting . . . ." Appellant's App. at 71. The contract also directs TCI to "assume[] responsibility for implementing and monitoring all safety precautions and programs related to the performance of the Work." Id. Furthermore, TCI was to "designate a Safety Representative with the necessary qualifications and experience to supervise the implementation and monitoring of all safety precautions and programs related to the Work." Id. The Safety Representative was to "make routine daily inspections of the Site and . . . hold weekly safety meetings with [TCI's] personnel, Subcontractors and others as applicable." Id.

6

Finally, the contract instructed that TCI and subcontractors "shall comply with all Legal Requirements relating to safety." Id.

This language, taken as a whole, makes clear that TCI intended to assume the duty of keeping the worksite reasonably safe. First, the language quoted above is found in subparagraph 2.8, whose heading is aptly entitled: "**Design-Builder's Responsibility for Project Safety**." App. at 71. Such a heading is telling of the purpose the section served: to outline the responsibilities TCI was to assume. By assuming responsibility for implementing and monitoring all safety precautions and programs related to work performance, TCI expressly shouldered the duty of carrying out and periodically supervising the very safety policies that may have prevented worker injury here. Assumption of responsibility also means that TCI assumed the risk of liability for damages that might have been incurred if any of those safety precautions and programs were to ever fall short of the reasonable standard of care. Though we stop short of assessing whether TCI's actions failed to meet the requisite standard – a question better left to the fact finder – we are convinced TCI assumed the duty of care, and thus the risk of potential liability, when it assumed responsibility for implementing and monitoring safety precautions and programs.

Beyond the explicit assumption of responsibility for safety, the contract also bestowed upon TCI a level of control that satisfies our concerns over imputing liability on a general contractor who enjoys no control over the means and manner of completing the work. In the contract, TCI explicitly agreed that it "shall at all times exercise complete and exclusive control over the means, methods, sequences and techniques of construction." App. at 70; ¶ 2.7.2. TCI further assumed responsibility for "proper performance of the Work of Subcontractors and any acts and omissions in connection with such performance." App. at 70; ¶ 2.7.4. Additionally, TCI agreed to "provide all material, equipment, tools and labor, necessary to complete the Work." App. at 53; ¶ 1.1. These clauses, taken together, demonstrate an intent to control, which we believe translates into an intent to assume the duty of care in this instance.

Finally, charging TCI with the duty of designating a safety representative to perform inspections and hold safety meetings with contractors further supports Ryan's contention that TCI assumed a specific duty to maintain a reasonably safe environment. The safety representative's obligations extended to supervising and implementing the safety precautions and programs

7

imputed on TCI, as well as performing safety inspections and holding safety meetings with subcontractors. In fact, on his first day of work, Ryan attended a half-day site orientation meeting, conducted by TCI personnel, that covered a number of topics related to safety. Despite TCI's claim that the safety representative was not someone whose duty it was to prevent accidents, we don't see how the provision designating a safety representative and outlining his obligations can be harmonized with others in the contract, unless the very purpose of performing these supervisory and implementation obligations was to prevent accidents.

The harmonized sum of all these provisions, coupled with contractual language noting TCI's general recognition for the importance of performing work in a safe manner so as to prevent injury to workers on the site, convinces us that the TCI contract affirmatively demonstrated TCI's intent to assume a duty of care toward Ryan. TCI certainly did not have to assume such a contractual duty. However, it did – and in doing so, it assumed a duty of care not ordinarily imputed on a general contractor.

**III.** **We resolve the issue narrowly, based on the language of the specific contract in question, not on Court of Appeals precedent.**

We reiterate that our decision today is solely guided by our contract interpretation precedent. In making their arguments, both parties point us toward Court of Appeals precedent on this issue. Ryan argues that language from TCI's contract falls squarely in line with similar contracts found in Court of Appeals cases finding a general contractor assumed the duty of care. TCI, on the other hand, proposes that the Court of Appeals correctly analogized the TCI contract to those found in cases where no duty of care was assumed.

Indeed, our Court of Appeals has decided various cases involving similar circumstances and has found the existence of a contract-formed duty in some instances, while finding an absence of intent to assume the duty in others. Beginning with the oldest, the string of Court of Appeals cases finding that a duty existed include: Harris v. Kettlehut Const., Inc., 468 N.E.2d 1069, 1077 (Ind. Ct. App. 1984), trans. not sought; Perryman v. Huber, Hunt, & Nichols, Inc., 628 N.E.2d 1240, 1244 (Ind. Ct. App. 1994), trans. denied; Stumpf, 863 N.E.2d at 871; and Capitol Construction Servs., Inc v. Gray, 959 N.E.2d 294, 305 (Ind. Ct. App. 2011). TCI, on the other hand, points us to Helms v. Carmel High Sch. Vocational Bldg. Trades Corp., 844 N.E.2d 562,

564 (Ind.Ct.App.2006), <u>aff'd in part by</u> 854 N.E.2d 345 (Ind. 2006) and <u>Shawnee Const. & Eng'g, Inc. v. Stanley</u>, 962 N.E.2d 76 (Ind. Ct. App. 2011) – each of which reached the opposite conclusion on the issue of duty.

Admittedly, contracts at issue in cases finding that a duty of care existed, particularly those in <u>Strumpf</u> and <u>Capitol</u>, are strikingly similar to the contract before us.  The common thread in <u>Strumpf</u> and <u>Capitol</u> appears to be that a general contractor will assume a duty of care where the contract includes requirements to 1) take precautions for safety of employees, 2) comply with applicable law and regulation, and 3) designate a member of its organizations to prevent accidents. We certainly note that the TCI contract's language mirrors contracts in <u>Strumpf</u> and <u>Capitol</u> more closely than it does those in <u>Helms</u> and <u>Shawnee</u>, but we caution that none of those cases are the basis for our decision today.

Notwithstanding whatever apparent similarities to other contracts exist, we think this case is one best decided by taking into account our Court's precedent on contract interpretation, as applied to the particular contract language at issue.  Although the Court of Appeals' cases on assumption of duty certainly can be instructive – to the extent that they guide courts in evaluating the spectrum of language that may reveal intent – we think conducting a phrase-by-phrase comparison of language in each Court of Appeals case to the contract involved here is not the preferred approach.  That is not to say that Court of Appeals precedent on assumption of duty of care cannot ever be helpful in guiding a court, but we see the issue in this case as one best settled by a contract interpretation analysis.

In sum, we decline the parties' request to rely on Court of Appeals precedent to decide whether TCI assumed the duty of care.  Instead, our decision here rests solely on our own contract interpretation precedent.

## IV.    Subsequent contracts TCI entered into do not disturb the duty of care owed.

As a final matter, we need not look toward subsequent subcontracts to gauge the parties' intent.  Guided by Indiana's "four corners" rule in written instrument interpretation, we find that subsequent subcontracts do not have any effect on TCI's assumption of the duty of care. The "four corners" rule makes clear that where the language of a written instrument is unambiguous, as it is here, the parties' intent is to be determined by reviewing the language contained within the "four

9

corners" of that written instrument. Carlson v. Sweeney, Dabagia, Donoghue, Thorne, Janes & Pagos, 895 N.E.2d 1191, 1197 (Ind. 2008) (finding that the Court looks to the four corners of a will and the language used in the instrument to determine the testator's intent). "[E]xtrinsic evidence is not admissible to add to, vary or explain the terms of a written instrument if the terms of the instrument are susceptible of a clear and unambiguous construction." Univ. of S. Indiana Found. v. Baker, 843 N.E.2d 528, 532 (Ind. 2006) (quoting Hauck v. Second Nat'l Bank of Richmond, 153 Ind. App. 245, 259, 286 N.E.2d 852, 861 (1972), trans. denied).

Here, we find there is no need to look beyond the TCI contract's language. The entirety of TCI's agreement with Gander Mountain is contained within the four corners of the TCI contract. Article 3 notes that the contract documents form the entire agreement between TCI and Gander Mountain. Article 2, which contains a definition and enumeration of the "Contract Documents," does not incorporate any of the subsequent subcontracts. App. at 53. Thus, the subsequent contracts that TCI entered into, and the responsibilities those subcontracts impute on subcontractors, have no bearing on TCI's duty or on our decision today.

## Conclusion

We hold that, by entering into a contract containing language that required TCI to assume responsibility for implementing and monitoring safety precautions and programs for all individuals working on the site, and by agreeing to designate a safety representative to supervise such implementation and monitoring, TCI affirmatively demonstrated an intent to assume a non-delegable duty of care toward Ryan. Accordingly, we reverse the trial court's grant of summary judgment for TCI, grant Ryan's motion for partial summary judgment on the issue of duty, and remand for further proceedings on breach, causation, and damages.

Rush, C.J., and Rucker, Massa, and Slaughter, JJ., concur.