

**FILED**

Aug 24 2020, 8:57 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT SHIEL
SEXTON COMPANY INC.

Kevin C. Schiferl
Maggie L. Smith
Timothy L. Karns
Frost Brown Todd LLC
Indianapolis, Indiana


ATTORNEYS FOR APPELLANT CIRCLE B.
CONSTRUCTION SYSTEMS, LLC

James W. Hehner
Brittany K. Norman
Clendening Johnson & Bohrer, P.C.
Indianapolis, Indiana


ATTORNEYS FOR AMICI CURIAE

Bryce H. Bennett, Jr.
Laura S. Reed
Riley Bennett Egloff LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Jeffrey A. Hammond
Cohen & Malad, LLP
Indianapolis, Indiana


ATTORNEY FOR AMICUS CURIAE

Lance R. Ladendorf
Pavlack Law, LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shiel Sexton Company Inc.;<br>Circle B Construction Systems,<br>LLC,<br><br>*Appellants-Defendants,*<br><br>v.<br><br>Joshua Towe,<br><br>*Appellee-Plaintiff* | August 24, 2020<br><br>Court of Appeals Case No.<br>18A-CT-1446<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Thomas J. Carroll,<br>Judge<br><br>Trial Court Cause No.<br>49D06-1505-CT-15897 |

**May, Judge.**

[1] Shiel Sexton Company Inc. ("Shiel Sexton") and Circle B Construction Systems, LLC ("Circle B") bring this interlocutory appeal of the trial court's grant of partial summary judgment to Plaintiff/Appellee Joshua Towe ("Towe") on the issue of whether Shiel Sexton and Circle B, individually, assumed by contract a non-delegable duty to protect Towe, who was a temporary worker assigned to work for Rose and Walker Supply Lafayette, Inc., d/b/a Rose and Walker Supply Indianapolis, Inc. ("Supplier"), and was injured while on a construction site to deliver construction supplies to Circle B. The Indiana Trial Lawyers Association appears as Amicus Curiae ("ITLA Amicus") in support of Towe, and appearing in support of Shiel Sexton as a single Amici are: Associated General Contractors of Indiana; Asphalt Pavement Association of Indiana; Construction Advancement Foundation of Northwest Indiana, Inc.; Indiana Constructors, Inc; and Michiana Area Construction Industry Advancement Fund (collectively "Construction Amici").

We consolidate, reorder, and restate the issues on appeal as follows:

> 1. Did the contract that Shiel Sexton entered to become General Contractor contain language by which Shiel Sexton assumed a non-delegable duty to protect all individuals who worked on the construction site?

> 2. Did the contract between Shiel Sexton and Circle B contain language by which Circle B assumed a non-delegable to protect the employee of Circle B's third-party supplier of materials?

We reverse in part, affirm in part, and remand.

# Facts and Procedural History

Hendricks Commercial Properties ("Hendricks") owned land at the corner of 86th Street and Keystone Avenue in Marion County ("the Property"). Hendricks hired Shiel Sexton as General Contractor to construct the Ironworks on the Property ("the Project"). Shiel Sexton subcontracted with Circle B to build part of the Project, and Circle B contracted with Supplier to deliver materials to the Property that Circle B needed to construct its portion of the Project.

On October 16, 2013, Supplier sent three workers to deliver two truckloads of metal studs to Circle B at the Property. Because each bundle of metal studs weighed approximately 1,000 pounds, a boom crane was needed to lift the bundles from the trucks, and Supplier's employees brought a truck with a power boom crane mounted on it. Two of the workers were permanent employees of

Supplier: Wesley Criddle, who was a truck driver and boom operator, and Chris McNeese, who was a truck driver and laborer. The third employee, Towe, was an employee of Express Employment Professional and was on temporary assignment to Supplier.

[5] When Supplier's employees arrived at the Property, a Circle B employee told Supplier's employees where to unload the metal studs. Criddle was operating the boom and hoisting the loads up to the designated area. When Criddle realized it was time for the three employees of Supplier to take a break, he was in the middle of hoisting a load, and he stopped the boom crane with the load in the air. Towe and McNeese walked into the area directly below the hoisted load and began their break. Criddle exited the boom crane and descended the ladder. Soon thereafter, the bundle of metal studs began to tip and studs poured from the bundle onto Towe and McNeese, causing injuries to both. Investigation revealed a leak in a hydraulic line on the boom had caused the boom to tip and drop the load.

[6] Towe sued Shiel Sexton, Circle B, Supplier, and a number of businesses believed to have serviced and/or repaired the boom truck.[1] (Shiel Sexton App. Vol. II at 42-46.) Supplier was dismissed from this action because it was paying worker's compensation benefits to Towe. (*Id*. at 17.) Summary judgment was

---

[1] The businesses believed to have serviced the truck included: RPM Machinery, LLC d/b/a Macdonald Machinery Company; Neely Corp. d/b/a PFM Car and Truck Care ("PFM Indy"); Proactive, LLC d/b/a PFM Car and Truck Care ("PFM Carmel"); PFM Automotive Management, Inc., d/b/a PFM ("PFM Management"); and PFM Express Lube, Inc. d/b/a PFA Car and Truck Care Center ("PFM Zionsville").

granted to all the truck service and/or repair businesses except PFM Indy, about whom there exist "material issues of fact regarding [its] involvement in the facts and circumstances surrounding this case." (Appealed Order at 5.) Shiel Sexton, Circle B, and Towe then filed competing motions for summary judgment.

[7] Shiel Sexton asserted: (1) it did not owe a duty of care to Towe because it "did not contractually assume a duty to provide a safe workplace for the employees or agents of its subcontractor's suppliers[,]" (Shiel Sexton App. Vol. II at 72), and (2) it was not the proximate cause of Towe's injuries. (*Id*. at 82-84.) Towe responded to Shiel Sexton's motion for summary judgment by asserting Shiel Sexton, through its contract with Hendricks, assumed a nondelegable duty of safety that could not have been assigned to a subcontractor such as Circle B. (*See* Shiel Sexton App. Vol. III at 139-164.)

[8] Circle B asserted it was entitled to summary judgment because it could not have a duty of care to Towe when the contract between Hendricks and Shiel Sexton "imposes a non-delegable duty upon Shiel Sexton which cannot be modified by any subsequent agreement with Circle B." (Circle B App. Vol. II at 46.) Towe responded to Circle B's motion for summary judgment by asserting Circle B also assumed a duty, by its contract with Shiel Sexton, that was non-delegable and protected the safety of all persons working on the project, including Towe. (Circle B App. Vol. III at 70-112.)

[9] The trial court held a hearing on the competing motions for summary judgment and then entered the orders that are at issue in this appeal. As to Shiel Sexton, the trial court ordered:

> The Court now finds that there is no genuine issue of material fact regarding the nondelegable duty of the Defendant Shiel Sexton Company, Inc., and that, as a matter of law, the Defendant Shiel Sexton assumed, by contract, a non-delegable duty of safety to all persons working on the project, including the Plaintiff Joshua Towe, and that the Plaintiff is entitled to Partial Summary Judgment on the issue of Defendant Shiel Sexton's contractual assumption of a non-delegable duty of safety.
>
> The Court further finds that there are questions of material fact as to proximate cause of the injury sustained by Plaintiff, thereby precluding the entry of summary judgment in favor of Defendant Shiel Sexton on the issue of proximate cause. It is, therefore:
>
> **ORDERED** that Defendant Shiel Sexton Company, Inc.'s Motion for Summary Judgment is **DENIED**.
>
> It is further **ORDERED** that Plaintiff's Motion for Partial Summary Judgment as to Defendant Shiel Sexton on the issue of Duty is hereby **GRANTED** and that Partial Summary Judgment be, and hereby is, entered in favor of the Plaintiff and against Defendant Shiel Sexton Company, Inc. that as a matter of law the Defendant Shiel Sexton Company, Inc. assumed, by contract, a nondelegable duty for the safety of all persons working on the project, including Joshua Towe;
>
> It is further **ORDERED** that, in addition to liability for their own negligence, the Defendant Shiel Sexton Company, Inc. is vicariously liable for the negligence of Circle B Construction

Systems, LLC and Joshua Towe's employer, Rose and Walker Supply.

(Appealed Order at 2-3) (emphases in original).

[10]     As to Circle B, the trial court ordered:

>        The Court now finds that there is no genuine issue of material fact regarding the nondelegable duty of the Defendant Circle B Construction Systems, LLC, and that as a matter of law, the Defendant Circle B assumed, by contract, a non-delegable duty of safety to all persons working under it on the project, including the Plaintiff Joshua Towe, and that the Plaintiff is entitled to Partial Summary Judgment on the issue of Defendant Circle B's contractual assumption of a non-delegable duty of safety.

>        The Court further finds that there are questions of material fact as to the proximate cause of the injury sustained by the Plaintiff, thereby precluding the entry of summary judgment in favor of Defendant Circle B on the issues of proximate cause. It is, therefore:

>        **ORDERED** that Defendant Circle B Construction Systems, LLC's Motion for Summary Judgment is **DENIED**.

>        It is further **ORDERED** that Plaintiff's Motion for Partial Summary Judgment as to Defendant Circle B on the issue of Duty is hereby **GRANTED** and that Partial Summary Judgment be, and hereby is, entered in favor of the Plaintiff and against Defendant Circle B Construction Systems, LLC that as a matter of law the Defendant Circle B Construction Systems, LLC assumed, by contract, a nondelegable duty for the safety of all persons working under it on the project, including Joshua Towe;

It is further **ORDERED** that, in addition to liability for their own negligence, the Defendant Circle B Construction Systems, LLC is vicariously liable for the negligence of Joshua Towe's employer, Rose and Walker Supply.

(*Id*. at 3-4) (emphases in original).

The trial court certified those orders for interlocutory appeal, and our court accepted jurisdiction. Shiel Sexton and Circle B filed separate briefs of Appellant. Towe then filed his Appellee Brief, and ITLA Amicus filed its Amicus Brief in support of Towe's Brief. Shiel Sexton and Circle B filed separate reply briefs and, on that same day, Construction Amici moved to file an Amici Brief in support of Shiel Sexton. We granted Construction Amici's motion, accepted their Amici Brief, and then received reply briefs from other parties.[2]

# Discussion and Decision[3]

---

[2] We held oral argument on July 18, 2019, at the Indiana Statehouse. We thank counsel for their well-prepared and well-presented arguments.

[3] As a preliminary matter, we address arguments by Shiel Sexton and Circle B about the language in the trial court order that states each of those parties is "vicariously liable for the negligence of" other parties. (*See* Appealed Order at 3 & 4.) Shiel Sexton argues it is "premature" to declare it vicariously liable when the only issue decided was duty. (Shiel Sexton Br. at 41.) Similarly, Circle B argues it cannot be "vicariously liable" when no one has yet been found negligent. (Circle B Br. at 27.) In response, Towe asserts their arguments are "a quibble over semantics, not substance." (Towe Br. at 41.) Towe agrees "elements of breach (as to Shiel Sexton for its own negligence, Circle B for its own negligence, and Rose and Walker for its negligence), proximate cause, and damages, all still must be proven at trial." (*Id*.) As the parties all agree the trial court decided only whether Shiel Sexton and Circle B assumed a duty, and that all other elements of the claims would need to be proven at trial, we proceed to reviewing whether the trial court properly granted summary judgment to Towe as to the assumption of duty by Shiel Sexton and Circle B.

[12]   We review appeals from the grant or denial of summary judgment using the same standard as the trial court: summary judgment is appropriate only where the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Rogers v. Martin*, 63 N.E.3d 316, 320 (Ind. 2016). All facts and reasonable inferences are construed in favor of the non-moving party. *City of Beech Grove v. Beloat*, 50 N.E.3d 135, 137 (Ind. 2016). Where the challenge to summary judgment raises questions of law, we review them de novo, *Rogers*, 63 N.E.3d at 320, and questions of contract interpretation "are well-suited for summary judgment." *Ryan v. TCI Architects*, 72 N.E.3d 908, 913 (Ind. 2017). The party appealing the trial court's decision has the burden to convince us the trial court erred, but we scrutinize the trial court's decision carefully to make sure a party was not improperly denied its day in court. *Id*.

[13]   To prevail on a claim of negligence, a plaintiff must demonstrate three elements: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) compensable injuries proximately caused by the breach. *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016). Whether a duty exists is a question of law for the court to decide. *Rogers*, 63 N.E.3d at 321. "Absent duty, there can be no negligence." *Ryan*, 72 N.E.3d at 913.

[14]   Herein, the trial court determined both Shiel Sexton and Circle B had a duty to protect Towe, who was the employee of a third-party supplier of materials. All parties agree the starting point for our legal analysis of duty is the analysis

provided by our Indiana Supreme Court in *Ryan*. Therein, our Indiana

Supreme Court explained:

> As to the duty owed by a general contractor, the long-standing
> rule in Indiana is that "a principal will not be held liable for the
> negligence of an independent contractor." *Bagley v. Insight
> Commc'ns Co., L.P.*, 658 N.E.2d 584, 586 (Ind. 1995) (citing *Prest-
> O-Lite Co. v. Skeel*, 182 Ind. 593, 597, 106 N.E. 365, 367 (1914);
> also citing *City of Logansport v. Dick*, 70 Ind. 65, 78 (1880)).
> Therefore, a general contractor . . . will ordinarily owe no
> outright duty of care to a subcontractor's employees, much less
> so to employees of a sub-subcontractor. This means that when a
> subcontractor fails to provide a reasonably safe workspace, the
> general contractor will not incur liability for employee injury,
> even when such injury is proximately caused by the
> subcontractor negligence. The rationale behind this rule is that a
> general contractor has little to no control over the means and
> manner a subcontractor employs to complete the work. *Stumpf v.
> Hagerman Const. Corp.*, 863 N.E.2d 871, 876 (Ind. Ct. App.
> 2007)[, *trans. denied*].
>
> However, five exceptions to our general rule exist. One such
> exception allows for the existence of a duty of care where a
> contractual obligation imposes a "specific duty" on the general
> contractor. *Bagley*, 658 N.E.2d at 586. "If a contract
> affirmatively evinces an intent to assume a duty of care,
> actionable negligence may be predicated on the contractual
> duty." *Stumpf*, 863 N.E.2d at 876. In other words, a contract
> that is found to demonstrate the general contractor's intent to
> assume a duty of care exposes the general contractor to potential
> liability for a negligence claim where no such liability would
> have otherwise existed. A duty imposed by contract, once
> formed, is non-delegable and is thought to encourage the general
> contractor to minimize the risk of resulting injuries. *Bagley*, 658
> N.E.2d at 588.

*Id*. at 913-14 (internal footnote omitted).[4]

Our Indiana Supreme Court then analyzed the language in the contract making TCI the general contractor for construction of a Gander Mountain store to determine whether the contract affirmatively evinced an intent by TCI to assume a duty of care toward Ryan, who was the employee of a sub-subcontractor of TCI. In undertaking this analysis, the Court noted it was "[c]onsidering this particular contract's language," "taking the contract as a whole," and applying "well-established principles of contract interpretation[.]" *Id*. at 914.

> In interpreting a contract, we ascertain the intent of the parties at the time the contract was made, as disclosed by the language used to express the parties' rights and duties. We look at the contract as a whole to determine if a party is charged with a duty of care and we accept an interpretation of the contract that harmonizes all its provisions. A contract's clear and unambiguous language is given its ordinary meaning. A contract should be construed so as to not render any words, phrases, or terms ineffective or meaningless.

*Id*. (internal citations omitted).

The contract between Gander Mountain and TCI provided:

---

[4] The footnote in *Ryan* listed the other four exceptions to the general rule that a general contractor has no duty to independent contractors. *See Ryan*, 72 N.E.3d at 913 n.3. None of those other four exceptions is raised by a party herein, but they include: (1) when the contract requires intrinsically dangerous work; (2) when an act will cause a nuisance; (3) when an act "will probably cause injury to others unless due precaution is taken;" and (4) when an act is illegal. *Id.*

> "[TCI] recognizes the importance of performing the Work in a safe manner so as to prevent damage, injury or loss to . . . all individuals at the Site, whether working or visiting . . . ." Appellant's App. at 71. The contract also directs TCI to "assume[ ] responsibility for implementing and monitoring all safety precautions and programs related to the performance of the Work." *Id*. Furthermore, TCI was to "designate a Safety Representative with the necessary qualifications and experience to supervise the implementation and monitoring of all safety precautions and programs related to the Work." *Id*. The Safety Representative was to "make routine daily inspections of the Site and ... hold weekly safety meetings with [TCI's] personnel, Subcontractors and others as applicable." *Id*. Finally, the contract instructed that TCI and subcontractors "shall comply with all Legal Requirements relating to safety." *Id*.

*Id*. at 914-15. Our Indiana Supreme Court held that "language, taken as a whole, makes clear that TCI intended to assume the duty of keeping the worksite reasonably safe." *Id*. at 915. As such, TCI "assumed a duty of care not ordinarily imputed on a general contractor." *Id*. at 915-16.

[17] However, our Indiana Supreme Court then went on to explain that its decision was "solely guided by our contract interpretation precedent," *id*. at 916, rather than being based on existing caselaw regarding contractual assumption of duty. *Id*.

> Although the Court of Appeals' cases on assumption of duty certainly can be instructive—to the extent that they guide courts in evaluating the spectrum of language that may reveal intent— we think conducting a phrase-by-phrase comparison of language in each Court of Appeals case to the contract involved here is not the preferred approach.

*Id*. We keep this directive in mind as we turn to the contracts that existed herein between Hendricks, Shiel Sexton, and Circle B.

### 1. Did Shiel Sexton assume a duty to protect Towe?

[18] Both Circle B and Towe assert that Shiel Sexton assumed a duty to protect Towe when Shiel Sexton signed its Master Contract with Hendricks. In particular, both Circle B and Towe point to Article 10.1 of that contract, which provides:

> **The safety and health of Contractor or Contractor's employees, subcontractors and agents brought on Owner premises are and will be the sole responsibility of Contractor**. Contractor will ensure that Contractor's employees, subcontractors and agents comply with all Owner rules and regulations while on Owner premises. Owner reserves the right to remove any Contractor's employee, subcontractor or agent who in Owner's reasonable business judgment poses a threat to the safety of Owner facilities or employees. Contractor will report all accidents and injury-inducing occurrences arising from the performance of Work immediately. Contractor is solely responsible for any governmental or quasi-governmental compliance concerning safety, health and accident reporting of any kind. Owner is entitled to receive, at its request, copies of any accident or incident reports prepared by Contractor.

(Shiel Sexton App. Vol. 2 at 104) (emphasis added).

[19] Towe asserts the first sentence of that paragraph means that Shiel Sexton assumed sole responsibility for the safety of "anyone and everyone who would have been on the project site performing any nature of work or providing any materials in furtherance of the completion of the Ironworks project." (Towe Br.

at 22.) To support his assertion, Towe points to other phrases in various parts of the Master Contract, including Article 2.2, Exhibit A, and Article 12. Article 2.2 states in relevant part:

> Contractor will furnish all management, supervision, labor materials, supplies (except to the extent Owner elects to, provide materials and supplies), equipment, tools, machinery, transportation, services, necessary and/or required personnel protective equipment for its employees, and everything necessary to fully and properly perform the Work to the satisfaction of the Owner.

(Shiel Sexton App. Vol. II at 100.) From the four pages of the "Work Order" that is Exhibit A, Towe highlights a sentence that provides: "Contractor will obtain multiple bids for the Work from subcontractors and material suppliers and will deliver bids to Owner for review with Contractor." (*Id*. at 114.) Article 12 addresses liens that may be filed against owner based on labor or materials supplied, and its final sentence provides: "Contractor will provide Owner with updated and ongoing lists of all subcontractors, vendors and suppliers who are working on, or who are providing materials." (*Id*. at 105.)

[20] Contrary to Towe's assertions, the facts that Hendricks made clear in the Work Order that it wanted to be part of the process of hiring subcontractors and vendors – because there was a maximum cost for the Project that could not be exceeded – and that Hendricks made clear that Shiel Sexton would be responsible for payment of any liens for labor or materials that might be placed on the property, do not require us to read Article 10.1's reference to Contractor

being solely responsible for the health and safety of "Contractor's employees, subcontractors and agents" to include every possible sub-subcontractor or vendor of a subcontractor. Courts are to infer a contractually assumed duty that contravenes the common law presumption that a contractor has no duty only if the language of the contract "affirmatively evinces an intent to assume a duty of care." *Stumpf*, 863 N.E.2d at 876.

[21] Circle B notes that Article 10.1 of the Master Contract also required Shiel Sexton to "ensure that Contractor's employees, subcontractors and agents comply with all Owner rules and regulations while on Owner premises." (Shiel Sexton App. Vol. II at 104; *and see* Circle B Br. at 20.) That requirement, however, is not as broad as the requirement in *Ryan* that TCI "exercise complete and exclusive control over the means, methods, sequences and techniques of construction." 72 N.E.3d at 915.

[22] Moreover, although Article 10.1 required Shiel Sexton to "report all accidents and injury-inducing occurrences arising from performance of Work immediately[,]" (Shiel Sexton App. Vol. II at 104), neither Circle B nor Towe has directed us to language in the Master Contract whereby Shiel Sexton was charged with the duty to designate a "safety representative to perform inspections and hold safety meetings with contractors[.]" *Ryan*, 72 N.E.3d at 915. We decline to cobble together language from various portions of the Master Contract to change the meaning of the language provided in the provision about Safety. None of the other language cited by Towe or Circle B demonstrates Shiel Sexton intended to assume a duty toward the employee of a

third-party delivery service bringing supplies to a subcontractor. For these reasons, we conclude the Master Contract between Hendricks and Shiel Sexton did not contain language by which Shiel Sexton assumed a non-delegable duty to protect Towe.[5] The trial court erred when it denied Shiel Sexton's motion for summary judgment because it owed no duty to Towe.

## *2. Did Circle B assume a duty to protect Towe?*

[23] Shiel Sexton argues that, in its contract with Circle B, Circle B assumed a duty to protect Towe. In relevant part, that contract provides:

### ARTICLE 24 SAFETY

#### 24.1 Conformance

Subcontractor shall at its own expense, comply with all manufacturer's literature, safety signage and laws, statutes, codes, rules and regulations, lawful orders and/or ordinances promulgated by any governmental authority, including without limitation, the applicable requirements of the Occupational Safety and Health Act of 1970, and the Construction Safety Act of 1969. Subcontractor shall take all precautions which are necessary to protect against any conditions created during or caused by its Work which will involve any risk of bodily harm to persons or risk of damage to any property. Subcontractor shall continuously inspect its Work and the materials and equipment

---

[5] Because we hold Shiel Sexton did not assume a duty, we need not address Circle B's argument that Shiel Sexton, if it had assumed such a duty, could not have entered into a contract with Circle B that created a non-delegable duty for Circle B to protect Towe. (*See* Circle B Br. at 22-25; *but see* Towe Br. at 35-39 (arguing both Shiel Sexton and Circle B could have assumed a duty) *and* ITLA Amicus Br. at 21-27 (same).) Instead we proceed directly to whether Circle B assumed a non-delegable duty to Towe based on the language in the contract between Shiel Sexton and Circle B.

which Subcontractor brings on the Project site to discover and determine any such conditions which affect the safety and health of employees. Subcontractor shall be solely responsible for discovering and correcting any conditions.

## 24.2    Use of Power-operated Equipment for Hoisting

Subcontractor and any of its sub-subcontractors, vendors, suppliers utilizing power-operated equipment that can hoist, lower and horizontally move a suspended load, as set forth in 29 C.F.R. 1926.1400 shall comply with OSHA Crane and Derricks Subpart CC. In addition, Subcontractor shall provide and pay for all labor, materials, equipment, tools, construction equipment and machinery and other services necessary to comply with 29 C.F.R. 1926.1402 relating to ground conditions and supporting material. The subcontractor shall be deemed the Controlling Entity as that term is defined in 29 C.F.R. 1926.1401.

## 24.3    Project Site Rules and Regulations

Subcontractor hereby acknowledges that at all times during the term of this Subcontract Agreement, it shall comply with the safety policy and the jobsite rules and regulations of the Contractor, which may be modified from time to time. Subcontractor shall take all necessary steps toward compliance and shall have the sole responsibility for the safety of its employees and agents. Subcontractor shall be liable for each hazardous condition which Subcontractor either creates or controls, whether or not the persons exposed to the hazard are Subcontractor's employees or agents. Subcontractor is responsible for providing its employees and agents appropriate personnel protective equipment (PPE) for the activity being performed; at a minimum hard hats and appropriate clothing for the Project as required by Contractor.

## 24.4    Controlling Contractor

Subcontractor shall at all times be the controlling employer responsible for the safety programs and precautions applicable to its Work. Subcontractor shall control the activities of its employees and any other person or entity for which Subcontractor is responsible. Subcontractor shall be liable for each hazardous condition which Subcontractor either creates or controls. Subcontractor shall also be responsible for preventing its employees and persons or entities for which it is responsible from being exposed to any hazardous or dangerous condition. In the event an action is undertaken against Contractor for violations of law as a result of conditions allegedly created or controlled by Subcontractor or its sub-subcontractors, or any other person or entity for which Subcontractor is responsible, Subcontractor shall indemnify and hold Contractor harmless from all costs and/or damages which may be assessed as the result of such action, including reasonable attorney's fees and disbursements incurred in the defense of such action.

### 24.5   Accident and Injury Reporting

Subcontractor shall immediately report to the Contractor any injury or near miss to an employee or agent of the Subcontractor which occurred at the Project site. Subcontractor shall deliver copies of all accident and injury reports to Contractor and any other person or entity entitled thereto by applicable law, this Subcontract Agreement or the Subcontract Documents within twenty-four (24) hours of occurrence unless any law or requirement of the Subcontract Documents requires earlier notice.

### 24.6   Safety Representative

Subcontractor and sub-subcontractors shall have on the Project site a designated, qualified and competent Safety Representative empowered to act on behalf of Subcontractor in all matters pertaining to safety at all times while Subcontractor's Work is being performed. Before commencing its Work, Subcontractor

shall furnish to Contractor written notice of the appointment of its Safety Representative or its Sub-subcontractor's Safety Representative. Appointed Safety Representative(s) shall not be changed without written approval of Contractor. Subcontractor and its sub-tier contractors shall conduct daily (or more frequently if Work activities change) safety inspections of their Work areas and take corrective measures as warranted. If circumstances warrant such action in the Contractor's reasonable discretion, Contractor shall have the right to demand that Subcontractor provide a fulltime safety professional as Subcontractor's Safety Representative, who [sic] sole responsibility shall be to monitor the safe performance of Subcontractor's Work and matters related thereto.

(Shiel Sexton App. Vol. 2 at 164-65) (emphases in original).

[24] In *Ryan v. TCI*, our Indiana Supreme Court noted the "common thread" amongst the cases that found a contractor assumed a duty of care was that those contracts contained requirements for the contractor to: "1) take precautions for safety of employees, 2) comply with applicable law and regulation, and 3) designate a member of its organizations to prevent accidents." 72 N.E.3d at 916. When we look at the contract language quoted above, we have little difficulty recognizing the existence of those three requirements.

[25] Paragraph 24.6, which required Circle B to "have on the Project site a designated, qualified and competent Safety Representative" who could act on behalf of Circle B, (Shiel Sexton's App. Vol. 2 at 165), satisfied *Ryan*'s third common-thread requirement of requiring a designated person to prevent accidents. Paragraphs 24.1 and 24.2 required Circle B to comply with "laws, statutes, codes, rules and regulations, lawful orders and/or ordinances," (*id*. at

164), along with relevant OSHA and Construction Safety laws, and those requirements satisfy the second common-thread requirement from *Ryan*. 72 N.E.3d at 916 ("comply with applicable law and regulation"). Finally, Paragraphs 24.3 and 24.4 require Circle B to "take precautions for safety of employees," *Ryan*, 72 N.E.3d at 916, as it provided Circle B "shall have sole responsibility for the safety of its employees and agents," (Shiel Sexton's App. Vol. 2 at 164), and it required Circle B to provide personnel protective equipment for all employees and agents and to prevent hazardous or dangerous conditions "created or controlled by Subcontractor or its sub-subcontractors . . . ." (*Id*.)

[26] Because the contract Circle B entered into contains all three of those common-thread requirements, we hold the language within the four-corners of the contract document created a duty for Circle B to protect employees, agents, and other "persons[,]" (*see id*., Paragraph 24.3), from hazardous or dangerous situations created by Circle B's employees or agents. *See*, *e.g.*, *Ryan*, 72 N.E.3d 915 ("The harmonized sum of all these provisions . . . convinces us that the TCI contract affirmatively demonstrated TCI's intent to assume a duty of care toward Ryan."). Accordingly, we affirm the trial court's grant of summary judgment for Towe as to the issue of Circle B's assumption of a duty to protect him, and we "remand for further proceedings on breach, causation, and damages." *Id*. at 917.

# Conclusion

[27] We reverse the trial court's grant of summary judgment to Towe as to the assumption of a duty by Shiel Sexton, and we remand for the trial court to enter summary judgment for Shiel Sexton as it had no duty to protect Towe. We affirm the trial court's grant to summary judgment to Towe as to Circle B's assumption of a duty to protect Towe, and we remand for further proceedings as to breach, causation, and damages.

[28] Reversed in part, affirmed in part, and remanded.

Mathias, J., and Brown, J., concur.